UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LEE JOHNSON, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 15-13599-LTS |
| LOIS RUSSO, | ) | |
| Respondent. | ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

November 8, 2017

SOROKIN, J.

Lee Johnson, a prisoner at the Massachusetts Correctional Institution in Concord, Massachusetts, has filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raises three challenges to his conviction and sentence. His claims relate to perceived deficiencies by the trial court and his attorney during voir dire of prospective jurors, and to a jury instruction he argues was erroneous. The respondent has opposed the petition, arguing each of Johnson's claims fails either procedurally or substantively. For the reasons that follow, the petition is DENIED.

I. BACKGROUND

On May 13, 2010, following a jury trial in Middlesex County Superior Court, Johnson was convicted of assault and battery resulting in serious bodily injury ("A&B/SBI"), indecent assault and battery, and two counts of assault and battery ("A&B"). Doc. No. 1 at 2-3; Doc. No.

1-3 at 1.[1]  He received consecutive sentences of incarceration on the first two counts, followed by consecutive terms of probation on the A&B counts.  Doc. No. 1 at 2; S.A. at 6.[2]  The charges stemmed from Johnson's "alleged sexual assault of [a friend of his girlfriend] at the apartment in which [his girlfriend and their infant daughter] lived, and a resulting altercation with [his girlfriend] in which [another of her friends] attempted to intervene, all on the evening of October 10, 2008."  Doc. No. 1-3 at 2.  Johnson is black; all three complainants are white.  Id.

At trial, Johnson was represented by a public defender with at least four years of experience practicing criminal law, including representing defendants in five previous jury trials.  Id. at 9.  The trial judge described Johnson's attorney as "prepared, thoughtful, polished, skillful, and zealous."  Id.  The defense at trial turned on testimony by Johnson and his girlfriend that: the complainant alleging sexual assault was lying, motivated by Johnson's rejection of her efforts to initiate a consensual sexual encounter with him a week after she, Johnson, and his girlfriend had engaged in a "threesome"; Johnson's girlfriend had been the aggressor in the physical altercation; and the friend who intervened was injured by accident.  Id. at 5-10.

Although generally "aware that people of color may not get a fair trial from jurors of different backgrounds," Johnson's trial counsel "believes that making race an issue risks creating the perception, in the minds of jurors, that the defense attorney is 'playing the race card,' and that this can reflect adversely on the perceived credibility of the attorney, to the client's detriment."  Id. at 12.  In this case, "the race issue did not play a role in [the attorney's] trial strategy."  Id.  During jury selection, Johnson's counsel requested voir dire questions covering general bias and

---

[1] Citations to documents on the Court's electronic docket reference the assigned docket number and the page number from the ECF header at the top of each page.
[2] The respondent has filed a Supplemental Answer (cited as "S.A.") containing the state-court record in two bound volumes.  Doc. No. 21.

2

a variety of other topics, such as experience with sexual assault and domestic violence, but did not propose questions exploring racial bias. Id. at 13. According to Johnson's counsel, his failure to request such questions was an oversight, not a matter of strategy. Id. The trial court did not ask questions about race when examining prospective jurors, but would have done so had counsel asked for such questions. Id. The venire from which Johnson's jury was selected included few, if any, people of color. Id. at 2-3.

Without objection by defense counsel, the trial court instructed the jury regarding the mens rea elements of A&B/SBI and A&B as follows:

> [T]he Commonwealth has to prove . . . that [the defendant] intended to engage in a touching. . . . [T]he Commonwealth must prove that the defendant intended to make contact with the complainant's person. In other words that it was not an accident. An accident, of course, is an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden, unexpected event that takes place without the defendant's intending it. All that's meant here is that the Commonwealth must prove that the defendant intended to make the contact, not necessarily the particular type of contact or all the consequences, but the touching itself, the contact must have been intentional on the part of the defendant.

S.A. at 1022-24, 1030; see id. at 1037 (reflecting the "defense [wa]s content" with the jury instructions); see also Doc. No. 1-3 at 25-26 (reflecting the "intent" instruction given was an expanded version of the charge requested by the defense).

Johnson's timely direct appeal was stayed by the Massachusetts Appeals Court ("MAC") at his request, pending his filing a motion for a new trial. S.A. at 6, 11-12. His February 2012 motion challenged trial counsel's effectiveness, including with respect to juror voir dire. S.A. at 7; Doc. No. 1-3 at 1. After an evidentiary hearing featuring testimony by trial counsel and oral argument on Johnson's claims, the trial court denied Johnson's motion. See generally Doc. No. 1-3. The MAC affirmed in an unpublished April 3, 2014 decision, rejecting challenges to the denial of Johnson's counsel-ineffectiveness claim and to the trial court's description of the mens

rea required to sustain a conviction of A&B/SBI.  See generally Commonwealth v. Johnson, 5 N.E.3d 969, 2014 WL 1315007 (Mass. App. Ct. 2014).

The Supreme Judicial Court and the Supreme Court of the United States declined Johnson's applications for further review.  Johnson v. Massachusetts, 135 S. Ct. 1508 (2015); Commonwealth v. Johnson, 20 N.E.3d 611 (2014).  Johnson filed a timely federal habeas petition in this Court on October 20, 2015 raising three claims:

1) Trial counsel was constitutionally ineffective in failing to ensure an unbiased jury through individual voir dire related to racial bias;

2) The trial court erroneously omitted the element of malice from its instruction regarding A&B/SBI, which denied Johnson due process; and

3) The trial court erred in failing sua sponte to conduct individual voir dire of prospective jurors regarding racial bias, which denied Johnson due process.

Doc. No. 1 at 6, 8-9; see also Doc. No. 7 at 8-49.  Johnson's claims have been briefed and are ripe for disposition.[3]

II. LEGAL STANDARDS

A. General Habeas Review

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[3] In the Court's view, the three claims Johnson asserts are straightforward legally and factually. Nevertheless, both parties filed briefs dramatically longer than those typically submitted in routine habeas cases like this one.  See Doc. No. 7 (fifty-page petitioner's brief); Doc. No. 26 (forty-five-page respondent's brief); Doc. No. 29 (twenty-eight-page reply); cf. Local Rule 7.1(b)(4) (limiting briefs filed to support or oppose motions to twenty pages absent leave of court).  Counsel should strive for more efficient pleadings in the future.  See William Strunk, Jr. & E.B. White, The Elements of Style 23-24 (4th ed., Longman 2000) ("Omit needless words.").

4

proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts"). When applying this strict standard, federal courts must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007); see Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (noting "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong"); Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even

have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established holdings of the Supreme Court, not merely law articulated by a lower federal court, and not dicta of any court. Williams, 529 U.S. at 404-05; see Donald, 135 S. Ct. at 1376; Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). In a string of recent decisions reversing grants of habeas relief by lower federal courts, the Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced").

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by" the

6

Supreme Court. Mirzayance, 556 U.S. at 122. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). To succeed under § 2254, then, a petitioner must show that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

B. Ineffectiveness of Counsel

In order to establish that his counsel was constitutionally ineffective, a defendant must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which provides the "clearly established federal law governing" such claims. Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011). "First, the defendant must show counsel's performance was deficient," which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. "Second, the

7

defendant must show the deficient performance prejudiced the defense." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. As the Supreme Court repeatedly has emphasized, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010); accord Richter, 562 U.S. at 105. This is especially so because habeas review of counsel ineffectiveness claims is subject to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Titlow, 134 S. Ct. at 13 (quoting Pinholster, 563 U.S. at 190).

Counsel's performance is measured objectively, considering only what is "reasonable[] under prevailing professional norms." Strickland, 466 U.S. at 687-88; accord Premo v. Moore, 562 U.S. 115, 122 (2011). Federal courts must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. Strickland, 466 U.S. at 689; accord Mirzayance, 556 U.S. at 124. "It is '[r]are' that constitutionally competent representation will require 'any one technique or approach.'" Pinholster, 563 U.S. at 195 (quoting Richter, 562 U.S. at 106). A strategic choice "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable." Strickland, 466 U.S. at 690.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; accord Mirzayance, 556 U.S. at 127. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. To warrant

relief, a defendant must show that counsel's errors were "so serious as to deprive [him] of . . . a trial whose result is reliable." Id. at 687.

A "doubly deferential standard . . . applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles." Jewett, 634 F.3d at 75. In that context, the "pivotal question" is not whether the petitioner has met the Strickland standard in the first instance, but whether "fairminded jurists would all agree that the [state court's] decision [that he has not met it] was unreasonable." Id. (quotation marks omitted); accord Richter, 562 U.S. at 101. And, because "the Strickland standard is a very general one, . . . state courts have considerable leeway in applying it to individual cases." Jewett, 634 F.3d at 75.

## III. DISCUSSION

None of Johnson's claims entitle him to federal habeas relief, even assuming they are cognizable and have been properly exhausted.

### A. Voir Dire on Racial Bias

Johnson devotes the bulk of his submissions – more than thirty pages of his opening brief and twenty pages of his reply – to arguing that his constitutional rights to due process and the assistance of counsel were violated when the trial court and his defense counsel failed to examine prospective jurors about their ability to remain impartial where a black defendant was accused of assaulting white victims. Doc. No. 7 at 10-44; Doc. No. 29 at 5-26. He urges the Court to find this failure was so egregious that it infected his entire trial with structural error, and that the state courts' treatment of the issue was so deficient that he is entitled to relief, even under the strict standards of § 2254(d). Neither the record nor the law supports Johnson's attacks on his lawyer or on the state trial and appellate courts.

9

1. *Counsel Ineffectiveness*

Johnson first alleges defense counsel was ineffective for failing to ask the trial court to question prospective jurors regarding racial or ethnic bias. Doc. No. 1 at 6. He argues, and the state courts found or assumed, that defense counsel's oversight in not requesting such voir dire amounted to deficient performance. Doc. No. 7 at 22-28. The problem, according to Johnson, is the state courts' insistence on proof of prejudice resulting from what Johnson argues was a structural error for which a showing of prejudice is neither possible nor required. Id. at 29-34. This, he claims, was contrary to, or an unreasonable application of, clearly established federal law. Id. at 9-10, 29. Alternatively, Johnson urges that the state courts unreasonably determined the facts in order to conclude he had not established prejudice. Id. at 10, 34-44.

The MAC considered and rejected Johnson's counsel-ineffectiveness claim on its merits.[4] After "assuming, as the [trial] judge held," that counsel's failure to request race-bias voir dire was deficient performance,[5] the MAC concluded Johnson had "failed to establish that counsel's failings materially affected the outcome of the trial." Johnson, 2014 WL 1315007, at *1. The MAC cited the trial judge's finding that neither the events at issue in the case nor "the relationships among the participants were tinged by any form of racial bias." Id.[6] And, the

---

[4] Where the state's highest court denies review, a habeas court "looks through" to the last reasoned state-court decision resolving the petitioner's claims. Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008).

[5] The MAC applied the ineffectiveness standard found in Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), which is a "functional equivalent" of Strickland. Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002).

[6] The trial court's decision denying Johnson's new trial motion (and rejecting this counsel-ineffectiveness claim) is expressed in a thoughtful, twenty-seven-page written order which takes Johnson's claims seriously and disposes of them after meticulously examining the relevant facts and legal authorities. See generally Doc. No. 1-3.

MAC reasoned, Johnson did "not claim that any of the jurors were actually biased, and there [was] no evidence to support such a claim." Id.

The MAC's determination was neither contrary to, nor an unreasonable application of, clearly established federal law.[7] Like the MAC, and based on the trial court's findings of fact, this Court will assume that defense counsel's performance was deficient, thus satisfying Strickland's first prong.[8] Id.; Doc. No. 1-3 at 17. The question, then, is whether Johnson has established prejudice and to what extent he must do so.

Johnson asserts he need not demonstrate prejudice because counsel's failure during voir dire infected his entire trial with constitutional error and, thus, gives rise to a presumption of prejudice. Doc. No. 7 at 29-34. This view is unsupported by any law, let alone clearly established federal law. The "structural error doctrine" is reserved for ensuring "certain basic, constitutional guarantees that should define the framework of any criminal trial." Weaver v. Massachusetts, 137 S. Ct. 1899, 1907 (2017); see Neder v. United States, 527 U.S. 1, 8 (1999) (noting constitutional errors generally "can be harmless," with only a "very limited class of

---

[7] The Court will not consider this claim de novo. Doc. No. 7 at 29. Contrary to Johnson's representations, the MAC resolved his counsel-ineffectiveness claim on its merits, explicitly noting and rejecting his view that the failure to request race-bias voir dire amounted to structural error. 2014 WL 1315007, at *1 & n.2. In these circumstances, the traditional, limited review governing federal habeas proceedings is appropriate. See Richter, 562 U.S. at 100 (emphasizing that a state court need not give reasons in order for its decision to merit deference).
[8] Citing social science research, Johnson urges that "any time race is a factor in a criminal case, especially when the venire lacks people of color, it is incumbent upon trial counsel to alert the jury to the issue of race." Doc. No. 7 at 26. Because Johnson's ineffectiveness claim fails even if deficient performance is assumed, the Court need not evaluate the merits of Johnson's view that the Sixth Amendment obligates counsel to request race-bias voir dire whenever the defendant and victim are of different races or ethnicities. See Commonwealth v. Ramirez, 555 N.E.2d 208, 209-10 (Mass. 1990) (noting the decision to request race-bias voir dire is "one of numerous tactical decisions" defense counsel must make which raise "difficult issues of jury psychology," as such questioning might "activate latent racial bias" or "insult [jurors] without uncovering evidence of bias in hard-core bigots who refuse to acknowledge their prejudice").

11

cases" presenting structural errors warranting automatic reversal on direct appeal); United States v. Cronic, 466 U.S. 648, 656-58 (1984) (permitting presumption of prejudice upon proof of complete denial of counsel and when "the process loses its character as a confrontation between adversaries"). No Supreme Court decision suggests that the specific area of voir dire at issue here is constitutionally mandated, or that defense counsel's failure to request this one area of voir dire stripped Johnson's entire trial of its essential adversarial quality. Rosales-Lopez v. United States, 451 U.S. 182, 190 (1981) (explaining constitutional claim arises from failure to voir dire on race bias only if defendant requested such voir dire[9] and if there were "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in [the] particular case"); Ristaino v. Ross, 424 U.S. 589, 590, 596-97 (1976) (emphasizing that no constitutional rule of universal applicability requires race-bias voir dire "whenever there may be a confrontation in a criminal trial between persons of different races or ethnic origins"); Dukes v. Waitkevitch, 536 F.2d 469, 470-71 (1st Cir. 1976) (noting cases requiring race-bias voir dire invoked Supreme Court's supervisory power rather than any constitutional guarantee, and reversing grant of habeas relief where black defendant in interracial rape case was denied race-bias voir dire).

The prospective jurors in Johnson's case were questioned individually about a number of topics, including general bias, preconceived opinions about the case, and prior experience with sexual assault and domestic violence. Doc. No. 1-3 at 12-13. Race was not a topic actively raised at trial, nor does the Court's review of the record reveal that it was implicitly or invidiously injected into the case. See id. at 15 (noting defense counsel "consciously adopted a

---

[9] As the trial court reasonably stated in denying Johnson's motion for a new trial, "if trial counsel is permitted the strategic choice not to request a particular voir dire question, then it is difficult to see how its omission . . . can require automatic reversal." Doc. No. 1-3 at 18 (quotation marks omitted).

trial strategy that focused on issues (fabrication, credibility, and self defense) other than race," and an "absence of any evidence that the events [at issue] arose from racial animus on anyone's part").[10] Johnson has offered no evidence that any juror was actually biased; he relies, instead, on assertions of implicit bias arising from "societal fears of African American men, particularly as against white women."[11] E.g., Doc. No. 7 at 37. In a case raising similar claims, the First Circuit held that, "[w]hile interracial rape may be a classic catalyst of racial prejudice," there was no constitutional imperative requiring race-bias voir dire based solely on "the identities of parties and victims." Dukes, 536 F.2d at 471. That decision binds this Court and precludes a finding that counsel's failure to request race-bias voir dire, without more, entitles Johnson to habeas relief.[12] See Johnson v. Armontrout, 961 F.2d 748, 753 (8th Cir. 1992) (finding structural error

---

[10] Johnson argues that "much of the trial conduct exacerbated latent societal racial prejudice against black men as brutes prone to violence." Doc. No. 7 at 36. He cites the prosecutor's "angry" tone when cross-examining Johnson, references to whether Johnson paid support for children he fathered out of wedlock, and "inflammatory" closing argument suggesting the crimes resulted from Johnson's "rage" at having been "emasculated." Id. But these characterizations (which, the Court notes, as likely reflect a bias against Johnson based on his gender or the acts which he was accused of committing) fall woefully short of the types of circumstances in which the Supreme Court has found racial issues to be so "inextricably bound up with the conduct of the trial" as to require race-bias voir dire. Rosales-Lopez, 451 U.S. at 189-90; see also 2014 WL 1315007 (rejecting view that the prosecutor injected race into Johnson's trial).
[11] The respondent suggests Johnson improperly bases this argument on social science website and journal articles. Doc. No. 35-36. The Court views those sources as permissible, additional authority cited to support a claim which Johnson adequately presented to the state courts.
[12] Even the cases from other jurisdictions upon which Johnson relies most heavily do not support the result he seeks. Quintero v. Bell, 368 F.3d 892 (6th Cir. 2004), involved defense counsel's failure to object to the seating of seven jurors who previously had been members of juries that had convicted the petitioner's co-conspirators of the same offenses. This, the Sixth Circuit held, "amounted to an abandonment of meaningful adversarial testing throughout the proceeding" and rendered the trial presumptively unreliable. Id. at 893. Butler v. Hosking, 47 F.3d 1167 (6th Cir. 1995), involved a counsel-ineffectiveness claim with multiple components, including an alleged failure to voir dire on race bias in a case where a black male professor was charged with raping a white female student. The Sixth Circuit primarily focused on a separate failure of counsel (failure to call an expert witness who had found no evidence of forcible rape), and sustained the petitioner's ineffectiveness claim only after finding he had established Strickland prejudice (not based on a finding of structural error). Id.

13

only after petitioner demonstrated jurors were actually biased); see also Weaver, 137 S. Ct. at 1910-11 (holding petitioner who did not "preserve a structural error on direct review but raise[d] it later in . . . an ineffective-assistance-of-counsel claim" still had to show Strickland prejudice); cf. Smith v. Phillips, 455 U.S. 209, 215-17 (1982) (explaining "the remedy for allegations of juror partiality" is not automatic reversal, but "a hearing in which the defendant has the opportunity to prove actual bias").[13]

Accordingly, the MAC acted reasonably and consistently with clearly established federal law in concluding Johnson had not proven trial counsel's deficiency amounted to a structural error. 2014 WL 1315007, at *1 n.2.

Johnson, then, is obligated to satisfy the prejudice prong of Strickland. The MAC's conclusion that he failed to do so was not contrary to clearly established federal law, did not unreasonably apply such law, and was not based on an unreasonable determination of the facts regarding the charged sexual assault.[14] Johnson has not shown actual bias of any juror. Binding law forecloses this Court from simply presuming implicit bias of any juror for or against the defendant or a witness based solely on race or ethnicity. Rosales-Lopez, 451 U.S. at 190. As such, there is no basis from which to conclude that any seated juror in Johnson's case would

---

[13] It bears noting that Johnson does not request an evidentiary hearing on his claims in this Court in attempt to unearth evidence of actual bias, nor does it appear he did so in state court. See 2014 WL 1315007, at *2 (discussing request by Johnson for post-conviction discovery aimed at jury records and a claim that people of color were underrepresented in the Middlesex County jury pool).

[14] Johnson's argument that the MAC applied the wrong prejudice standard, Doc. No. 7 at 34-35, is belied by the MAC's explicit reliance on, and accurate recitation of, the Saferian standard (which is Strickland's equivalent). 2014 WL 1315007 at *1 & n.2; see also Doc. No. 1-3 at 18 (applying the correct standard to motion for a new trial). Recent Supreme Court decisions applying Strickland in other contexts do not support altering the traditional prejudice standard here. See Doc. No. 7 at 38-39 (citing cases regarding failure to request expert funds, to convey plea offer, and to advise regarding immigration consequences of guilty plea).

have answered questions about race bias in such a way that would have resulted in his or her removal for cause. Absent such proof, there can be no finding of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Strickland, 466 U.S. at 686; cf. Lear v. Cowan, 220 F.3d 825, 829 (7th Cir. 2000) (finding it "exceedingly unlikely that directing the venire's attention to the interracial character of [the crimes] would either have disposed the jury that was selected to lenity or have altered the composition of the jury in a direction favorable to [the defendant]").

Johnson's prejudice argument arises largely from his own belief that the evidence of sexual assault was "thin, illogical and not credible," and could be credited only by jurors suffering from a prejudicial belief that black men are likely to sexually assault white women. Doc. No. 7 at 25, 36-43. But the Court cannot premise an order granting federal habeas relief on such views, nor was the MAC obligated to adopt them. See Sanna, 265 F.3d at 10 ("Credibility is quintessentially a matter of fact, reserved in almost every circumstance for the trier of fact."); Doc. No. 1-3 at 3-8 (recounting the evidence offered by both sides at trial and not suggesting the prosecution's evidence was "thin" or "illogical"); cf. Jackson v. Virginia, 443 U.S. 307, 326 (1979) (requiring habeas court to "presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any [conflicting inferences supported by the historical facts] in favor of the prosecution, and [to] defer to that resolution"). Moreover, as a logical matter, the strength of evidence would become relevant to Johnson's counsel-ineffectiveness claim only if there were a basis for finding that a juror served with an undiscovered bias that

15

would have influenced his or her consideration of the evidence.[15] There is no evidence to support such a finding here.

Accordingly, Johnson's attack on trial counsel's failure to request race-bias voir dire fails.[16]

2. *Trial Court Error*

Johnson also alleges the trial court deprived him of due process in failing to question prospective jurors about racial bias, even absent a request for such an inquiry. Doc. No. 1 at 9. The respondent suggests this claim was not exhausted in state court and, thus, should be dismissed. See § 2254(b) (requiring state prisoners to exhaust available remedies in state court before seeking habeas relief). Because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," § 2254(b)(2), the Court will dispose of this claim on its merits rather than via the exhaustion doctrine.

---

[15] In fact, the strength of evidence might never become relevant. If Johnson could demonstrate that one or more jurors voted to convict him based on racial animus (i.e., was actually biased), then the Court would be faced with a structural error of constitutional dimensions that would warrant a presumption of prejudice. Cf. Tumey v. Ohio, 273 U.S. 510, 535 (1927) ("No matter what the evidence was against [the defendant], he had the right to have an impartial judge."). Although it certainly is true that proving such actual bias is no simple matter, at least one recent Supreme Court decision shows it is not impossible. See Pena-Rodriguez v. Colorado, 137 S. Ct. 855 (2017) (holding that rule against impeaching jury verdict must "give way" in case where, after a guilty verdict was rendered, one juror reported racist comments made by another juror during deliberations).

[16] To the extent Johnson presses a claim based on Article III, Section 2 of the U.S. Constitution, he has neither exhausted such a claim nor explained to this Court why analysis under that provision would yield a different result. S.A. at 282-301 (reflecting petition for review by SJC contained no such claim); see Mele v. Fitchburg District Ct., 850 F.2d 817, 823 (holding issue is exhausted in state court only if it is presented "within the four corners" of the petition for review by the SJC).

Johnson has cited no federal or Massachusetts law requiring a trial court to conduct individual voir dire on issues of racial or ethnic bias in any criminal case absent an express request by the defendant for such questioning, let alone on facts such as those presented here. See, e.g., Rosales-Lopez, 451 U.S. at 190 (explaining denial of defense request for race-bias voir dire is "an unconstitutional abuse of discretion" only when race issues are central to the conduct of the trial); Ham v. South Carolina, 409 U.S. 524 (1973) (finding due process violation where trial court denied defense request for race-bias voir dire in case where black civil rights activist charged with possessing marijuana argued that racist police officers framed him because of his local activism); Aldridge v. United States, 283 U.S. 308 (1931) (holding, on direct appeal, that trial court erred in denying race-bias voir dire requested by black defendant charged with killing a white police officer); Sanders v. Fair, 728 F.2d 557, 558 (1st Cir. 1984) (noting Constitution requires race-bias voir dire upon request only "where explicit racial issues are inextricably bound up with the conduct of the trial" (quotation marks omitted)); Commonwealth v. Sanders, 421 N.E.2d 436 (Mass. 1981) (requiring race-bias voir dire under state law in cases of interracial rape when requested by defense); Commonwealth v. Almeida, 776 N.E.2d 1039 (Mass. App. Ct. 2002) (noting state law requires race-bias voir dire in case of interracial sexual assault only if requested by defense); see also Commonwealth v. Robinson, 942 N.E.2d 980 (Mass. App. Ct. 2011) (upholding trial court denial of requested race-bias voir dire where black defendant was tried for killing Haitian victims, jury pool was mostly white, and racial/ethnic differences did not appear to play a role in the case).

Without such law, there is no basis for concluding the trial court erred in failing to question jurors regarding race bias, sua sponte, in Johnson's case. And, for the same reasons cited by the MAC and discussed in the preceding section regarding Johnson's inability to

establish structural error or prejudice flowing from counsel's failure to propose race-bias voir dire, "even if [the Court] could detect a whiff of cognizable constitutional error" by the trial court, "that error would be deemed harmless." Sanna, 265 F.3d at 14-15 & n.6 (applying Brecht v. Abrahamson, 507 U.S. 619 (1993)).

As such, Johnson's challenge to the trial court's voir dire fails.

B.   Jury Instruction on A&B/SBI

In his remaining claim, Johnson challenges the trial court's instruction to the jury defining the elements of the A&B/SBI charge. Doc. No. 1 at 8. He argues that the MAC unreasonably viewed the relevant paragraph of the criminal statute at issue as "plain," disregarded the ambiguity he claims arises from the language of the surrounding paragraphs, and upheld a jury instruction that omitted a specific intent requirement he contends is required both by the statute and due process. Doc. No. 7 at 45-49. According to Johnson, this was contrary to In re Winship, 397 U.S. 358 (1970), and other Supreme Court decisions, as it excused the Commonwealth from its burden of proving what he argues was an essential element of the crime – that he knowingly and intentionally committed an "assault and battery . . . so severe that serious bodily injury [would] result[]." Doc. No. 7 at 47-48.

Despite Johnson's failure to raise this issue at trial, Doc. No. 1-3 at 25-26; S.A. at 1037; the MAC addressed the claim and found it meritless. According to the MAC, A&B is a general intent crime that does not require proof of specific intent to injure the victim. 2014 WL 1315007, at *1. The provision providing for enhanced penalties under certain circumstances – i.e., where serious bodily injury results, where the victim is pregnant, or where the victim has a restraining order against the assailant – includes no intent requirement for A&B/SBI beyond the general intent required for A&B. Id.; Mass. Gen. Laws ch. 265, § 13A(b). The trial court's

18

instruction, in the MAC's view, was consistent with the "plain text of the statute." 2014 WL 1316007, at *1.

The MAC's decision was neither contrary to, nor an unreasonable application of, Winship or any other federal law. "Federal courts 'are bound by a State's interpretation of its own statute.'" Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995) (quoting Garner v. Louisiana, 368 U.S. 157, 166 (1961)). On habeas review, a federal court "will not disturb the state courts' construction or application of state law unless it can be shown that such construction or application offends the Constitution . . . ." Id. Generally speaking, defining and interpreting the elements of criminal offenses – including the requisite mental state – are matters left to state legislatures and courts. See Montana v. Egelhoff, 518 U.S. 37, 56 (1996) (rejecting due process challenge to state law foreclosing evidence of voluntary intoxication to rebut the mens rea requirement in a state criminal statute); Martin v. Ohio, 480 U.S. 228, 232 (1987) (expressing "reluctance . . . to disturb a State's decision with respect to the definition of criminal conduct"); McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986) (noting "that in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive").

In this case and others, the Massachusetts courts have interpreted the criminal statute at issue as lacking the specific intent element Johnson urges. E.g., Commonwealth v. Forbes, 14 N.E.3d 348, 353 (Mass. App. Ct. 2014) (holding state crime of mayhem is proven by establishing A&B/SBI plus an additional element of specific intent not required for A&B/SBI); Johnson, 2014 WL 1315007, at *1 (explaining A&B is a general intent crime, and the A&B/SBI statute does not enhance the required mens rea). The state courts' interpretation is consistent with the plain language of the statute, which provides enhanced penalties for three specified

forms of A&B but explicitly includes elevated mental states for only two of those forms. Compare Mass. Gen. Laws ch. 265, § 13A(b)(ii)-(iii) (requiring proof a defendant knew or had reason to know that the victim was pregnant, or knew that the victim had a restraining order against him), with id. § 13A(b)(i) (including no specified mens rea for an A&B which "causes serious bodily injury").

The trial court's instruction to Johnson's jury was consistent with the unambiguous statutory language and the Massachusetts courts' interpretation of it. 2014 WL 1315007, at *1. Johnson has cited no clearly established federal law that endorses the specific reading he seeks to apply to the A&B/SBI statute, let alone suggests the state courts' reading of it amounted to a constitutional violation. Cf. Sanna, 265 F.3d at 13 (rejecting claim that a state court's jury instruction impermissibly relaxed the prosecution's burden of proving the requisite mental state, noting Winship "operates at a high level of generality," and finding "no principled way to conclude" that the challenged instruction was contrary to or an unreasonable application of Winship or any other federal law). In these circumstances, Johnson's federal challenge to the trial court's instruction on the mens rea required for A&B/SBI is meritless.

IV. CONCLUSION

Because his claims fail on their merits, Johnson's habeas petition is DENIED.[17]

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge

---

[17] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained above, the state court's evaluation of Johnson's voir-dire-related claims was reasonable and consistent with federal law, particularly where race was not a central issue in his case, nor was there evidence establishing that any juror was actually biased. And, the denial of his challenge to the jury charge was reasonable in light of the plain language of the relevant statute, and did not deprive Johnson of due process.